IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MORGAN and<br>LAURIE MORGAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>MIDWEST NEUROSURGEONS, LLC,<br>Serve: CSC<br>      221 Bolivar Street<br>      Jefferson City, MO  65101<br><br>SONJAY J. FONN, D.O.,<br>a/k/a SANJAY J. FONN,<br>Serve: 304 S. Mount Auburn Road<br>      Cape Girardeau, MO  63703<br><br>ORTHOPAEDIC ASSOCIATES OF<br>SOUTHEAST MISSOURI P.C.,<br>Serve: Registered Agent<br>      Mr. Michael C. Trueblood<br>      48 Doctors Park<br>      Cape Girardeau, MO 63703<br><br>And<br><br>BERNARD C. BURNS, D.O.,<br>Serve: 194 Scenic View Lane<br>      Cape Girardeau, MO  63701<br><br>    Defendants. | Case No. 4:11-CV-396<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### COUNT I - MEDICAL MALPRACTICE

COMES NOW Plaintiff Michael Morgan and for Count I of Plaintiff's cause of action against Defendants Midwest Neurosurgeons, LLC, Sonjay Fonn, D.O., Orthopaedic Associates of Southeast Missouri, P.C. and Bernard C. Burns, D.O. states as follows:

1

## PARTIES

1. Plaintiffs Michael Morgan and Laurie Morgan are, and at all relevant times were, citizens of the State of Illinois. Prior to coming under the care of Sonjay Fonn, D.O. and Bernard Burns, D.O., Mr. Morgan was employed on a full time basis for General Cable Corporation preparing reels of low, medium and high voltage electrical transmission cable for quality control testing. As a result of the improper and negligent medical attention of Sonjay Fonn, D.O. and Bernard Burns, D.O., Mr. Morgan is permanently disabled and has lost his job with lost income and benefits in the past and future in excess of approximately $600,000.

2. Defendant Midwest Neurosurgeons, LLC, is a Missouri corporation in good standing engaged in providing healthcare services to patients for pay in the State of Missouri and at all times relevant hereto stood in a physician-patient relationship with Michael Morgan by and through its agents, servants and employees, including Defendant Sonjay Fonn, D.O.

3. Defendant Sonjay Fonn, D.O., a/k/a Sanjay J. Fonn, is a citizen of the State of Missouri. Defendant Fonn is an osteopathic doctor and at all relevant times stood in a physician-patient relationship with Michael Morgan. At all relevant times, Defendant Fonn was the agent, servant and employee of Defendant Midwest Neurosurgeons, LLC.

4. Defendant Orthopaedic Associates of Southeast Missouri, P.C. is a Missouri corporation in good standing engaged in providing healthcare services to patients in the State of Missouri and at all times relevant hereto stood in a physician-patient relationship with Michael Morgan by and through its agents, servants and employees, including but not limited to Defendant Bernard C. Burns, D.O.

5. Defendant Bernard C. Burns, D.O. is a citizen of the State of Missouri. Defendant Burns is an osteopathic doctor and at all relevant times stood in a physician-patient

relationship with Michael Morgan.  At all relevant times, Defendant Burns was the agent, servant and employee of Defendant Orthopaedic Associates of Southeast Missouri, P.C.

6. At all relevant times, Defendants, as doctors and licensed healthcare providers, by and through their agents, staff and employees, owed Michael Morgan the duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendants' profession.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and Plaintiffs allege an amount in controversy in excess of seventy five thousand dollars ($75,000), exclusive of interest and costs.

## FACTS

8. March 6, 2009, Mr. Morgan underwent a four-level fusion of the L2-3, L3-4, L4-5, and L5-S1 levels at Saint Francis Medical Center in Cape Girardeau, Missouri, which was performed by Sonjay Fonn, D.O.

9. Preoperatively, the nursing records indicate that both the anesthesiologist and Dr. Fonn were alerted to the fact that Mr. Morgan had a fine red rash to the back and the flank area.

10. Postoperatively, Mr. Morgan developed shortness of breath and chest pain requiring cardiology consultation.  He also had a fever of 102 degrees with generalized tremors. He also began to have weakness in the hip flexors bilaterally. Mr. Morgan was found to be able to move his legs weakly but continued to complain of difficulty bending the right leg at the knee in the bed and complained of left leg numbness.

11. Mr. Morgan began to complain of incisional pain. His back incision was found to be clean and dry and intact except for slight ecchymosis at the incision, and he was discharged to inpatient rehabilitation on March 11, 2009 for further strengthening.

12. In rehabilitation, he continued to have bilateral lower extremity numbness and right lower extremity weakness. He developed drainage from the upper half of his back incision, which was ordered to be cultured by Dr. Bernard Burns on March 17, 2009.

13. The rehabilitation record on March 17, 2009, found that he had debility "secondary to spinal cord injury," and that from the surgical wound, he had "yellowish drainage."

14. On March 17, 2009 at 9:50 a.m., a telephone order was called by Dr. Fonn to discharge the patient, and Mr. Morgan was sent home on March 17, 2009 with Valium, Norco, and follow-up medical appointments.

15. The night he was discharged home, he spiked a temperature of 102 degrees and remained febrile with continued drainage from the back incision.

16. He was readmitted on March 20, 2009 to St. Francis Medical Center where he was seen by infectious disease and a hospitalist for hypertension and sepsis.

17. The culture result from the March 17, 2009 back drainage grew Klebsiella pneumonia and Enterococcus species, and upon admission, March 20, 2009, blood cultures again grew Klebsiella pneumonia. The diagnosis of postoperative lumbar wound infection with sepsis was made by Charles LaValle, III, M.D.

18. On March 21, 2009, Mr. Morgan was returned to surgery by Dr. Fonn at Saint Francis Medical Center for a lumbar wound infection where he underwent "incision and drainage with debridement of lumbar wound infection."

19. At the time of the March 21, 2009 surgery, purulent fluid was seen and sent for cultures anaerobic and aerobic. The culture of this intraoperative fluid grew the same Klebsiella pneumonia and Enterococcus species.

20. Mr. Morgan was treated for his postoperative spinal surgical infection and sepsis and had MRI findings at the L1 vertebral body level consistent with osteomyelitis. A white blood cell tagged bone scan confirmed evidence of osteomyelitis involved in the lower thoracic spine and lumbar spine.

21. Mr. Morgan was eventually transferred on April 13, 2009 to inpatient rehabilitation for further strengthening. In rehab, Mr. Morgan continued to have bilateral lower extremity numbness and right lower extremity weakness. He continued to have drainage from the surgical incision.

22. Because of a lack of improvement with persistent drainage, fevers, pain, and weakness, he was transferred to Barnes-Jewish Hospital for further evaluation and care and admitted on April 15, 2009 under the care of Paul Santiago, M.D.

23. On admission, Mr. Morgan was also found to have a nondisplaced fracture of the body of L2 extending posteriorly into the pedicles.

24. The discharge summary from Barnes-Jewish Hospital on April 25, 2009 reflects the principal and secondary diagnosis as "(1) Postoperative wound infection and intraspinal abscess. (2) Deep venous thrombosis. (3) Skin rash." The history reflects the fact that as a result of his infection and sepsis, he had acute renal failure and hypotension.

25. A central catheter line was inserted for long term intravenous access, and he was also treated for evidence of DVT and pulmonary embolus.

26. Paul Santiago, M.D. notes on July 14, 2009 that, "Initially the patient was diagnosed with an enterococcal wound infection at the outside hospital. However, the patient suffered from persistent fevers and was ultimately diagnosed with an MRSA wound infection here at Barnes."

27. Dr. Kurt Martin evaluated Mr. Morgan on October 12, 2009 where he found that Mr. Morgan suffered from osteomyelitis of the vertebral bodies after surgical intervention with persistent paresthesias of both lower extremities from scar tissue as a result of the infection and surgical intervention. He found that he was on doxycycline suppression for MRSA in his spine, and the plan was for lifelong doxycycline suppressive dosing. Mr. Morgan was found to have significant pain in his back requiring the use of narcotics and that he had qualified for disability "because of this terrible back pain with secondary infection."

28. Dr. Steven R. Graboff has reviewed Mr. Morgan's medical records and is prepared to testify that Defendant Sonjay Fonn, D.O. was negligent and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendant's profession by:

(a) performing an elective spinal surgical procedure in the presence of a clinically evident skin rash and potential infection on March 6, 2009. The standard of care requires that for any elective procedure, the skin be free and clear of any potential contamination or infection. Since this was a purely elective procedure and there was no urgency or emergency about the need to perform the surgery, the presence of the rash at the location of the surgical site on March 6, 2009 contraindicated the performance of the procedure on that date. The standard of care required that the surgery be aborted at that time and not started, and that Mr. Morgan be reevaluated and returned to surgery at a future date when the rash had resolved and the skin was clear.

(b) providing intravenous postoperative antibiotics from March 6, 2009 through March 11, 2009 in the absence of any evidence of infection or need for intensive intravenous antibiotic therapy. The standard of care requires that prophylactic antibiotics can be given within 30 to 40 minutes prior to the surgery and typically two or three doses maximum every 8 hours postop for prophylactic antibiotic

6

        coverage, but antibiotics beyond that are not medically indicated or necessary unless the physician is treating an infection or a potentially contaminated and dirty wound.

(c)      discharging Mr. Morgan from the hospital, March 17, 2009 by telephone order.

(d)      failing to examine Michael Morgan on March 17, 2009 before ordering discharge home.

(e)      discharging Mr. Morgan home on March 17, 2009 in the presence of a draining infected postoperative spinal surgical wound.

(f)      failing to diagnose an acute postoperative spinal wound infection on March 17, 2009.

(g)      failing to keep Mr. Morgan hospitalized on March 17, 2009 and prophylactically begin intravenous general antibiotic coverage until the results of the culture and sensitivity of the back drainage obtained March 17, 2009 became available.

29.      Defendant Sonjay Fonn, D.O., acted in his individual capacity and as the employee, agent and servant of Midwest Neurosurgeons, LLC during the commission of the foregoing acts of negligence.

30.      Dr. Steven R. Graboff has reviewed Mr. Morgan's medical records and is prepared to testify that Defendant Bernard C. Burns, D.O. was negligent and failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the Defendant's profession by:

(a)      failing to keep Mr. Morgan hospitalized on March 17, 2009, begin generalized antimicrobial intravenous treatment and close observation and inspection of a draining postoperative surgical spinal wound.

(b)      allowing discharge of Michael Morgan in the presence of a draining postoperative spinal wound incision and potential serious infection on March 17, 2009.

(c)      failure to diagnose and treat an acute postoperative spinal wound infection on March 17, 2009.

31. Defendant Bernard C. Burns, D.O. acted in his individual capacity and as the employee, agent and servant of Orthopaedic Associates of Southeast Missouri, P.C. during the commission of the foregoing acts of negligence.

32. As a direct and proximate result of Defendants' negligence set forth above Plaintiff Michael Morgan suffered the following injuries:

    (a)    Delay in the diagnosis of a serious postoperative lumbar spinal surgical wound infection;

    (b)    Delay in proper treatment for the postoperative lumbar spinal surgical wound infection;

    (c)    Sepsis;

    (d)    Superinfection with methicillin-resistant staphylococcus aureus (MRSA);

    (e)    Acute renal failure;

    (f)    Deep vein thrombosis (DVT);

    (g)    Pulmonary embolism (PE);

    (h)    Vertebral osteomyelitis;

    (i)    Spinal cord injury affecting both lower extremities, right greater than left;

    (j)    Pathologic fracture L2 vertebral body and pedicle as a result of weakening of the bone from osteomyelitis in the area of the posterior instrumentation and pedicle screws;

    (k)    Need for lifetime suppressive antibiotics;

    (l)    Severe chronic pain in his lumbar spine and both lower extremities;

    (m)    Severe ambulatory dysfunction and the need for a motorized scooter for mobility;

    (n)    Medical expenses in excess of $250,000; and

    (o)    Lost income and benefits in excess of $600,000.

WHEREFORE, Plaintiff Michael Morgan prays judgment against Defendants jointly and severally in an amount in excess of $75,000.00 exclusive of interest and costs and for such other and further orders as the Court deems just and proper in the premises.

## COUNT II– LOSS OF CONSORTIUM

COMES NOW Plaintiff Laurie Morgan, and for Count II of this cause of action against , Defendants Midwest Neurosurgeons, LLC, Sonjay Fonn, D.O., Orthopaedic Associates of Southeast Missouri, P.C. and Bernard C. Burns, D.O. states as follows:

33. Plaintiff Laurie Morgan herewith adopts by reference each and every allegation contained in paragraphs 1 through 32 of this Complaint the same as if fully herein set forth.

34. Plaintiff Laurie Morgan is the lawful wife of Plaintiff Michael Morgan, and therefore is entitled by law to the healthy society, companionship and consortium of Plaintiff Michael Morgan.

35. That as a direct and proximate result of the aforedescribed negligence of Defendants, and one or more of the aforementioned injuries to Michael Morgan, Plaintiff Laurie Morgan has lost the healthy society, companionship and consortium of Michael Morgan, all to Plaintiff Laurie Morgan's damage.

WHEREFORE, Plaintiff Laurie Morgan prays judgment against Defendants jointly and severally in an amount in excess of $75,000.00 exclusive of interest and costs and for such other and further orders as the Court deems just and proper in the premises.

DOWD & DOWD, P.C.

BY: _____
DOUGLAS P. DOWD (29240MO)
LAURA G. LUMAGHI (50816MO)
Attorneys for Plaintiffs
100 North Broadway, Suite 1600
St. Louis, Missouri 63102
Telephone: (314) 621-2500
Fax:(314) 621-2503
doug@dowdlaw.net
laura@dowdlaw.net